UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| VERA EASTER,<br>  Individually and as Next Friend of<br>JORDAN DELANEY EASTER,<br>        PLAINTIFFS,<br><br>vs.<br><br>AVENTIS PASTEUR, INC.,<br>  Individually and as successor-in-interest to<br>  CONNAUGHT LABORATORIES, INC.,<br>  PASTEUR MERIEUX, and PASTEUR<br>  MERIEUX CONNAUGHT;<br>BAYER CORPORATION d/b/a<br>  INDIANA BAYER CORPORATION;<br>DOW AGROSCIENCES LLC;<br>DOW CHEMICAL COMPANY;<br>ELI LILLY AND COMPANY;<br>GLAXOSMITHKLINE, Individually and as<br>  successor-in-interest to SMITHKLINE<br>  BEECHAM CORPORATION;<br>JOHNSON & JOHNSON CONSUMER<br>COMPANIES, INC.;<br>MERCK & CO., INC.;<br>ORTHO-CLINICAL DIAGNOSTICS, INC.;<br>TXU US HOLDINGS COMPANY,<br>  Individually and as successor-in-interest to<br>  TXU Electric Company, TU Electric, and<br>  Texas Utilities Electric Company;<br>WYETH d/b/a WYETH, INC., WYETH<br>  LABORATORIES, WYETH-AYERST,<br>  WYETH-AYERST LABORATORIES,<br>  WYETH LEDERLE, WYETH LEDERLE<br>  VACCINES, and LEDERLE<br>  LABORATORIES and formerly known as<br>  AMERICAN HOME PRODUCTS<br>  CORPORATION,<br><br>        DEFENDANTS | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No.: 5:03cv141<br><br>JURY TRIAL REQUESTED<br><br><br><br><br><br><br><br><br><br><br>**PLAINTIFFS ORIGINAL COMPLAINT** |

1

Plaintiffs Vera Easter, Individually and as Next Friend of Jordan Delaney Easter alleges and complains against the above named Defendants and each of them and demands a jury trial of all issues and causes of action:

## PARTIES

1. Plaintiffs VERA EASTER, Individually and as Next Friend of JORDAN DELANEY EASTER are residents of Texarkana, Texas.

2. Defendant, **Aventis Pasteur, Inc.,** individually and as successor-in- interest to **Connaught Laboratories, Inc., Pasteur Merieux,** and **Pasteur Merieux Connaught**, is a foreign corporation doing business in the State of Texas. Aventis Pasteur, Inc. may be served through its registered agent in the State of Texas, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3. Defendant, **Dow AgroSciences LLC**, is a foreign corporation doing business in the State of Texas. Dow AgroSciences LLC may be served through its registered agent in the State of Texas, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

4. Defendant, **Dow Chemical Company**, individually and doing business as Dow AgroSciences, is a foreign corporation doing business in the State of Texas. Dow Chemical Company may be served through its registered agent in the State of Texas, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

5. Defendant, **Eli Lilly and Company**, is a foreign corporation doing business in the State of Texas. Eli Lilly and Company may be served through its registered agent in the State of Texas, National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, Texas 78028.

6. Defendant, **GlaxoSmithKline,** individually and as successor-in-interest to **SmithKline Beecham Corporation**, is a foreign corporation doing business in the State of Texas. GlaxoSmithKline may be served through its registered agent in the State of Texas, Corporation Service Company, 800 Brazos Street, Suite 750, Austin, Texas 78701.

7. Defendant, **Merck & Co., Inc.**, is a foreign corporation doing business in the State of Texas. Defendant Merck & Co., Inc. may be served through its registered agent in the State of Texas, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

8. Defendant, **Wyeth**, doing business as **Wyeth, Inc., Wyeth Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines,** and **Lederle Laboratories** and formerly known as **American Home Products Corporation** may be served with process through its registered agent, Prentice-Hall Corporation, 800 Brazos, Suite 750, Austin, Texas 78701-2554.

9. Venue is proper in this judicial district because the events giving rise to this lawsuit occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. The symptoms of mercury poisoning have been recognized since the 18th century. Mercury has been well known as one of the most toxic substances on earth for more than 100 years and has been proven to cause neurological damage even at very low doses. Newborn children are more susceptible to mercury's effect as it interferes with the developmental processes of the infant brain.

11. Certain vaccines routinely administered to children, which vaccines were designed, manufactured, sold, and/or distributed by certain Defendants contained at all relevant times a mercury-laden preservative called thimerosal.

12. By following a typical immunization schedule during the first 18 months of life, American infants were exposed to 237.5 mcg (micrograms) of mercury from the thimerosal in vaccines. This exposure results in a mercury body burden in the typical 18 month-old child that exceeds federal exposure guidelines by a factor of 30-plus times the permissible limit.

13. In the 1980's, the Food and Drug Administration ("FDA") proposed a regulation requiring the removal of thimerosal from all over-the-counter products due to safety concerns. On December 14, 1998, the FDA published a notice in the Federal Register requesting that vaccine manufacturers provide data on mercury content in their vaccines. The FDA's Center for Biologics Evaluation and Research ("CBER") has confirmed that mercury has been present in over 30 vaccines marketed in the U.S. during the past five years.

14. In June of 1999, the FDA announced that: "Infants who receive thimerosal-containing vaccines at several visits may be exposed to more mercury than recommended by federal safety guidelines for total mercury exposure."

15. In July of 1999 the American Academy of Pediatrics ("AAP") issued a notice to its members stating a preference for thimerosal-free vaccines, in light of concerns that the mercury in thimerosal-containing vaccines could be hazardous to infants' health.

16. Plaintiffs' Minor Plaintiff, through their vaccinations administered during the first two years of life, were subjected to very high doses of the mercury contained in

thimerosal, a highly toxic preservative intentionally added to the vaccines the Minor Plaintiff received, without adequate testing, without any adequate warnings and despite the ready availability of a substitute preservative.

17. The Minor Plaintiff, through the thimerosal-containing vaccinations administered to them during the first two years of their life, were poisoned by the cumulative doses of mercury in the thimerosal, a highly toxic adulterant intentionally introduced into the vaccines by the vaccine manufacturer Defendants.

18. As a result of the mercury in the thimerosal-containing vaccinations that the Minor Plaintiff received as an infant, the Minor Plaintiff now suffers, and in the future will continue to suffer, from the toxic neurological effects of mercury poisoning.

19. The vaccines that contained the thimerosal that caused the Minor Plaintiff's mercury poisoning were manufactured and/or marketed and/or sold by the Vaccine Manufacturer Defendants without adequate testing, without any adequate warnings and despite the ready availability of a substitute preservative.

20. The vaccines that contained the thimerosal that caused the Minor Plaintiff's mercury poisoning were manufactured and/or marketed and/or sold by the Vaccine Manufacturer Defendants without adequate testing, without any adequate warnings and despite the ready availability of a substitute preservative.

21. Certain Defendants are responsible for the continued manufacture and/or distribution and/or marketing and/or sale of thimerosal-containing vaccines since approximately 1983. The vaccines were promoted by all the Defendants at all relevant times without any reference to the toxic hazards and potential public health ramifications resulting from being laden with the mercury-containing thimerosal preservative.

22. All Defendants continuously misrepresented to the consuming public the efficacy of such products because of their failure, in all instances, to advise such persons that the thimerosal-containing vaccines, used in their ordinary fashion, could and would result in mercury poisoning as a result of the underlying toxicity of the unidentified mercury injected with the vaccine product.

## FIRST CAUSE OF ACTION - STRICT LIABILITY

23. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

24. All Defendants (referred to throughout this First Cause of Action as "Defendants") knew and intended that the referenced vaccination products and/or thimerosal would be used by a purchaser and/or physicians, and would be routinely injected into infants without inspection for defects and without knowledge of the significant hazards resulting from such use.

25. Thimerosal-additive vaccines were, at all relevant times, defective products and unsafe for their intended purpose in that exposure to the mercury could and did cause serious disease and/or injury. The defects existed in said products at the time they left the possession of Defendants. Said products did, in fact, cause personal injuries, including severe mercury poisoning to Plaintiffs' minor children. The Minor Plaintiff was injured as a result of exposure to mercury found in their vaccinations, which exposure occurred in a reasonably foreseeable and ordinary manner, thereby rendering the products defective, unsafe, and dangerous for use.

26. When the Minor Plaintiff was exposed to the dangerous mercury containing products manufactured, and/or marketed and/or sold by Defendants, Plaintiffs did not

know of the substantial danger of using said products because such dangers are not readily recognizable by such persons. Said Defendants further failed to adequately warn of the risks to which Plaintiffs and their child, the Minor Plaintiff, would be exposed.

27. In researching, manufacturing, designing, modifying, testing, or failing to test, warning or failing to warn, distributing, offering for sale, supplying, selling, marketing, warranting, re-branding, manufacturing for others, packaging and advertising the aforementioned mercury-containing products, Defendants did so with conscious disregard for the safety of persons who would be injected with the mercury laden vaccines. Said knowledge was obtained, in part, from scientific studies published on or before 1930, and thereafter.

28. Long before Plaintiffs' children were exposed to Defendants' mercury-containing vaccines, said Defendants were aware that infant members of the general public, such as the Minor Plaintiff, would come in contact with their products, but would have no knowledge or information indicating that such vaccine products could cause injury. Defendants further knew and understood that such persons as Plaintiffs would assume, and in fact did assume, that exposure to the mercury-containing vaccines was safe, when in fact said exposure was extremely hazardous to human health, and particularly to the health of infants such as the Minor Plaintiff.

29. With such knowledge, Defendants opted to manufacture, distribute, offer for sale, supply, sell, market, warrant, re-brand, manufacture for others, package and advertise said vaccine products without attempting to protect Plaintiffs from the high risk of injury resulting from exposure to the mercury intentionally added to the vaccines. Instead, Defendants intentionally failed to reveal their knowledge of said risks, and

consciously and actively concealed and suppressed such knowledge from Plaintiffs and members of the general public, thus impliedly representing to Plaintiffs and members of the general public that the mercury-containing products were safe for all reasonably foreseeable uses.

30. The referenced conduct of said Defendants was motivated by their financial interest in the continuing manufacture, sale, distribution, supply, marketing, re-branding, manufacturing for others, packaging and advertising of such products. Defendants consciously disregarded the safety of children and in fact consciously recognized, anticipated and understood that such products would cause injury to children such as the Minor Plaintiff.

31. Plaintiffs allege that the aforementioned Defendants impliedly warranted their mercury-containing products to be safe for their intended use, but such products in actual fact created an unreasonable risk of bodily harm to exposed infants such as the Minor Plaintiff.

32. Plaintiffs further allege that the injuries to their children, the Minor Plaintiff, are the result of cumulative exposure to mercury contained in Defendants' products, and that all such products caused and contributed to cause, and in so doing, proximately caused, injuries to Plaintiffs.

33. Plaintiffs relied upon Defendants' misrepresentations, lack of warnings, and implied warranties of the fitness of said vaccines and their mercury-containing ingredient, thimerosal. As a direct, foreseeable and proximate result thereof, Plaintiffs have been injured permanently as alleged herein.

## SECOND CAUSE OF ACTION – NEGLIGENCE IN THE MANUFACTURE, MARKETING AND/OR SALE OF MERCURY CONTAINED IN VACCINE PRODUCTS

34. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

35. At all times relevant hereto, all Defendants (collectively referred to throughout this Second Cause of Action as "Defendants") were involved in the manufacture, sale, distribution and marketing of mercury-containing vaccine products.

36. At all times herein mentioned, Defendants were engaged in the business of manufacturing, distributing, offering for sale, supplying, selling, marketing, re-branding, manufacturing for others, packaging and advertising mercury-containing pediatric vaccines or vaccine related products, including thimerosal (mercury) and other vaccine products containing thimerosal.

37. At all times herein mentioned, Defendants singularly and jointly, negligently, and carelessly researched, manufactured, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, distributed, bought, offered for sale, supplied, sold, marketed, re-branded, manufactured for others, packaged, and advertised certain vaccines containing thimerosal (mercury).

38. The mercury found in thimerosal and thimerosal-containing vaccines proximately caused personal injuries to those persons injected with the vaccines and their parents, including Plaintiffs herein, while being used in a manner that was reasonably foreseeable, thereby rendering said substance (thimerosal) and any vaccines containing said substance unsafe and dangerous for use by the public at large and for those persons actually vaccinated, including the Minor Plaintiff.

9

39. Defendants had a duty to exercise due care in the pursuit of the activities mentioned above and Defendants breached said duty of due care.

40. Defendants knew, or should have known, that the aforementioned vaccine products would cause serious injury to persons such as the Plaintiffs, including mercury poisoning, and that foreseeable use, i.e. the vaccination process, could and would cause significant injury.

### THIRD CAUSE OF ACTION - GROSS NEGLIGENCE

41. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

42. The acts and omissions of all Defendants (collectively referred to throughout this Third Cause of Action as "Defendants"), over the course of many years, constitute gross negligence in light of Defendants' actual conscious indifference to the health, safety and welfare of those affected, i.e., the Plaintiffs and Plaintiffs' children, the Minor Plaintiff.

43. As a result of the actual conscious indifference of the Defendants, Plaintiffs are entitled to recover, and hereby request, punitive damages in an amount appropriate to punish and deter Defendants from similar acts of misconduct in the future.

### FOURTH CAUSE OF ACTION—FRAUD AND CONSPIRACY

44. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

45. All Defendants (collectively referred to throughout this Fourth Cause of Action as "Defendants") knowingly or recklessly made false, material representations by withholding and/or concealing information from the FDA, consumers and the general

public regarding the toxic hazards and potential public health ramifications associated with the use of their mercury-containing products.

46. By making misrepresentations, omissions and concealments, Defendants intended or had reason to expect that a class of citizens, including Plaintiffs herein, would rely on false information in assessing the safety of the defendants' products.

47. As a result of Defendants' misrepresentations, Plaintiffs were deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' mercury-containing vaccines.

48. In actual and justifiable reliance on Defendants' representations, Plaintiffs purchased mercury-containing vaccines and allowed their children to be injected with an unreasonable and dangerous quantity of mercury. These injections caused Plaintiffs to sustain damages including injuries, illnesses and disabilities.

49. Defendants derived economic benefit as a result of their direct fraudulent misrepresentations and/or their silent acquiescence of the representations of others.

50. Defendants, their subsidiaries and others contrived, combined, confederated, plotted, and agreed to withhold material information relating to the safety of their products from the FDA, consumers and the public at large. Defendants collectively sought economic benefit by fraudulently inducing a class of citizens, including Plaintiffs herein, to acquire mercury-containing vaccines.

51. As a result of Defendants' conspiracy to commit fraud, Plaintiffs sustained damages within the jurisdictional limits of this court.

52. As such, at all times material, the corporate Defendants have acted in conspiratorial concert and in a joint enterprise, and as the agent and alter ego of, and for the benefit of other Defendants.

53. The corporate Defendants have engaged in a conspiracy; the corporate Defendants have used one another as their agents, and each has served as the agent of the others; the corporate Defendants have functioned together in a joint venture; the corporate Defendants have masked their true identity by using and controlling alter-ego subsidiary corporations. These so-called subsidiary corporations, which the corporate Defendants have used, also serve as the agents of the Defendants.

## FIFTH CAUSE OF ACTION—NEGLIGENCE IN THE MARKETING, LICENSING, AND DESIGN OF THIMEROSAL

54. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

55. Defendant Eli Lilly and Company ("Eli Lilly") at all relevant times herein was engaged in the business of designing, manufacturing and selling drugs, health care products and chemicals for sale to and use by their customers and members of the general public.

56. Defendant Eli Lilly designed and/or held a design patent for a mercury-laden product known as thimerosal and has actively marketed its design in the United States of America and in the international community for over six decades.

57. In addition to holding this design patent, Eli Lilly has manufactured and marketed thimerosal as "Merthiolate®" and has obtained trademarks for its product name in over fifty countries.

58. While retaining trademark rights to Merthiolate®, Eli Lilly entered into licensing agreements with other drug manufacturers, thereby granting others the right to use its design. Under these agreements, Eli Lilly shared in the profits resulting from the implementation and use of its design.

59. Defendant had a duty to exercise ordinary care in the promotion, sale and distribution of its product and the licensing of its thimerosal design.

60. Defendant Eli Lilly breached its duty to exercise ordinary care by failing to adequately warn the FDA, its licensees, consumers and the public in general, including Plaintiffs herein, of the grave risks associated with the use of thimerosal. Instead, Defendant continued to promote, market and license its design for pecuniary gain.

61. Upon the expiration of its thimerosal patent, Defendant Eli Lilly had knowledge that other manufacturers were copying its design. As a result of this knowledge, Defendant was under a duty to exercise reasonable care to prevent the risks associated with its design from taking effect. Defendant knew or should have known that the use of its design in vaccines, a foreseeable use, could and would cause serious injuries to the persons injected. Defendant, however, failed to adequately warn the copying manufacturers, the FDA, consumers, and the public in general, including Plaintiffs herein, of the adverse risks associated with its design.

62. The injection of mercury-containing thimerosal, as designed by Eli Lilly, into the Minor Plaintiff, proximately caused the injuries of the Plaintiffs herein.

63. Additionally, the thimerosal injected into the Minor Plaintiff was manufactured without substantial modification or alteration of Eli Lilly's original design.

64. Throughout all relevant times contained herein, Eli Lilly derived economic benefit from the sales, distribution and licensing of thimerosal. At this filing, Defendant Eli Lilly continues to receive benefit from the fruits of its design and continues to maintain international trademarks for thimerosal under the trade name Merthiolate®.

65. Defendant Eli Lilly was reasonably certain that its acts and omissions as described in the preceding paragraphs would cause serious mental deficiency, impairment or injury to others. Defendant's acts and omissions did in fact cause the Minor Plaintiff, under the age of eighteen, to experience serious mental deficiencies, impairments and other injuries.

66. As a result of the actual conscious indifference of Defendant Eli Lilly, Plaintiffs are entitled to recover, and hereby request, punitive damages in an amount appropriate to punish and deter this defendant from similar acts of misconduct in the future.

## PROXIMATE CAUSE

67. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

68. The acts and omissions of all Defendants, each and every one of them, contributed to cause, and did proximately cause, the damages and injuries complained of by Plaintiffs.

69. The cumulative exposures to mercury contained in the thimerosal and the thimerosal-containing vaccines manufactured, distributed and/or sold by the Defendants caused the injuries and damages complained of.

70. Each and every exposure to the thimerosal and thimerosal-containing vaccine products of these Defendants contributed to an overall cumulative dose of mercury that, in combination, contributed to cause the complained of injuries and damages.

### **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows:

### **Compensatory Damages For All Causes of Action:**

Plaintiffs pray for recovery and reimbursement of damages resulting from the acts and omissions of Defendants as herein above listed, including but not limited to:

1. Recovery of all past and future costs and expenditures necessitated by the mercury poisoning of the Minor Plaintiff, caused by the conduct of Defendants;

2. Recovery of damages for the pain and suffering the Minor Plaintiff has experienced and will continue to experience as a result of the injuries caused by the conduct of Defendants;

3. Recovery of the lost wages and income that any and all Plaintiffs could reasonably have earned during their lifetime, but which they will be prevented from earning as a result of the injuries that were caused by the conduct of Defendants;

4. Recovery of damages for emotional distress to all Plaintiffs caused by the acts and omissions of the Defendants as herein above stated;

5. Recovery for loss of consortium, including the care, comfort, and society of their children, as suffered by these Plaintiffs and as caused by the acts or omissions of the Defendants as herein above stated; and

6. Recovery of damages for any lost services that would have been provided by Plaintiffs but for their injuries.

### Punitive Damages for the Third and Fourth Causes of Action:

Plaintiffs request proper and adequate punitive damages to punish and deter Defendants for a similar course of conduct in the future, as such damages are appropriate when acts and omissions of these Defendants rise to the level of conscious indifference to the rights, safety, and health of others, including, but not limited to, these Plaintiffs.

### Fees, Interest and Costs for All Causes of Action:

1. For pre-judgment and post-judgment interest as provided by law;

2. For costs of suit incurred herein; and

3. For such other and further relief, at law or equity, as this Court deems equitable, just and proper.

### JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff files this his Complaint against the Defendants and demands judgment against Defendants, jointly and severally, for compensatory damages and exemplary damages in excess of the minimum jurisdictional limits of the Court to compensate Plaintiff for all of his injuries and damages, both past and present, and pre-judgment and post-judgment interest, together with all costs of this proceeding and for the relief to which Plaintiff is entitled.

Respectfully submitted,

**NIX, PATTERSON & ROACH, LLP**
205 Linda Drive
Daingerfield, Texas 75638
Telephone: 903.645.7333
Facsimile: 903.645.4415

BY: Ed Hohn by permission ACW
ED HOHN
State Bar No. 09816392

C. CARY PATTERSON
State Bar No. 15587000

HAROLD W. NIX
State Bar No. 15041000

**WATERS & KRAUS, L.L.P.**
3219 McKinney Avenue
Suite 3000
Dallas, Texas 75204
Telephone: 214.357.6244
Facsimile: 214.357.7252

C. ANDREW WATERS
State Bar No. 20911450

CHARLES S. SIEGEL
State Bar No. 18341875
Federal I.D. 15736

MELISSA C. KATZ
State Bar No. 24007467

ATTORNEYS FOR PLAINTIFFS