IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| VERA EASTER, Individually and as Next Friend of JORDAN DELANEY EASTER, <br><br> Plaintiffs, <br><br> vs. <br><br> AVENTIS PASTEUR, INC., et al., <br><br> Defendants. | § § § § § § § § § § § § CIVIL ACTION NO.: 5:03-CV-141 (TJW) <br><br> JURY REQUESTED |

## WYETH'S MOTION TO PRECLUDE CERTAIN TESTIMONY OF, AND FOR ADDITIONAL TIME TO DEPOSE, DR. MARK GEIER

### MOTION

Defendant Wyeth moves for entry of an order under Fed. R. Civ. P. 37(c), (i) precluding Dr. Mark Geier from testifying on direct examination to any opinion, or basis therefor, not disclosed in the 49 pages of his report served on November 9, 2004 pursuant to Fed R. Civ. P. 26(a)(2)(B), and (ii) excluding any direct-examination testimony based on the material identified in the report's cover letter, which purports to designate all of Dr. Geier's published writings, presentations he has given, and any subsequent deposition testimony, as an additional source of opinion testimony. Rule 26(a)(2)(B) precludes such an open-ended designation.

In the alternative, Wyeth moves for an order requiring Dr. Geier to file an amended report that states "all opinions to be expressed," as required by Rule 26(a)(2)(B), and the bases and reasons therefor.

Regardless of the Court's ruling regarding the report, Wyeth also moves for additional time to depose Dr. Geier, pursuant to Fed. R. Civ. P. 30(d)(2), due to the vagueness of his expert report, the broad and ambiguous scope of his opinions, and the vast number of documents produced to Defendants on the day of Dr. Geier's deposition.

Wyeth's counsel have conferred with Plaintiffs' counsel, who oppose the relief requested by this motion.

## PROCEDURAL HISTORY

Plaintiffs' counsel in this case, Waters & Kraus, LLP, represent different plaintiffs in a number of vaccine cases that, like this, allege that the thimerosal preservative used in FDA-approved childhood vaccines caused autism.[1] One such case, Skevofilax v. Aventis Pasteur, Inc., is pending in the Maryland Circuit Court of Baltimore City. On October 7, 2004, Plaintiffs' counsel in Skevofilax designated Dr. Geier as an expert witness in the case. Plaintiffs' Expert Witness Designation, attached hereto as Exhibit ("Exh.") 1. Unlike federal court, Maryland state court procedure does not require a written report of "all opinions," signed by the expert witness, but does allow a discovery deposition of an expert witness. Compare Md. Rule 2-402(f) with Fed. R. Civ. P. 30. Dr. Geier was originally scheduled to be deposed on October 11, 2004 in the Skevofilax case, but that deposition was adjourned to November 12. Exh. 2, Letter from C. Andrew Waters to All Known Counsel Of Record, dated October 7, 2004. On October 20, defendants in the Skevofilax case served a notice of deposition for November 12 and also served

---

[1] As Wyeth has previously advised the Court, Plaintiffs' causation allegation has been rejected by numerous eminent authorities. See, e.g., Report of the Institute of Medicine, Immunization Safety Review, Vaccines and Autism, 7 (2004), http://www.nap.edu/books/030909237X/html.).

a request for the production of documents and materials, to be produced by November 5. Exh. 3, Vaccine Defendants' Notice of Deposition Relating to Mark Geier, M.D. Ph.D.

On October 11, Plaintiffs' counsel cross-noticed the deposition of Dr. Geier in Easter. Exh. 13, Plaintiffs' Amended Notice of Intent to Take Videotaped Deposition. On November 5, 2004, Plaintiffs' counsel withdrew Dr. Geier as an expert witness in Skevofilax. Exh. 4, Letter from C. Andrew Waters to All Known Counsel Of Record, dated Nov. 5, 2004.

Subsequently, on November 8, 2004, Plaintiffs designated Dr. Geier as a testifying expert witness in Easter. Exh. 5, Plaintiff's Amended Second Supplemental Response to Disclosures ("Pl. Second Supp.") ¶ (j)(2). The designation stated that Dr. Geier would be offered to "provide opinions based on reasonable medical and scientific probability" about a vast number of subjects, including: (i) the use of thimerosal in vaccines; (ii) forms of mercury and their putative neurotoxicity; (iii) neurodevelopmental harm allegedly attributable to mercury compounds; (iv) epidemiological studies concerning the claimed relation between mercury compounds and neurodevelopmental harm; (v) the unreasonably dangerous nature and insufficient warnings of thimerosal-containing vaccines; and (vi) the "significant conflicts of interest that have affected the scientific and medical debate." Id.

On November 9, the day after the date this Court set for expert witness disclosure, Plaintiffs served Dr. Geier's expert report ("Dr. Geier's report" or "Report"), attached hereto as Exh. 6(a)-(b). See Docket Control Order, dated April 27, 2004. A cover letter that accompanied the Report stated that, in addition to the Report, the following were additional sources of opinion testimony: all of Dr. Geier's published articles, presentations he has given and any subsequent deposition testimony. See Exh. 6(a), Cover Letter.

On November 10 – one day after receiving Dr. Geier's report – Defendants notified Plaintiffs that in connection with the deposition, Defendants would seek production of the materials that had previously been requested for Skevofilax, and "some additional items, including the documents that are required to be produced by the expert under Rule 26, the scheduling order and the Eastern District local rules." Exh. 14, Letter from Winstol D. Carter to C. Andy Waters, dated November 10, 2004. Defendants requested production of the documents before the deposition on November 12 (see Exh. 7, Notice of Intention to Take Oral Videotaped Deposition of Dr. Mark R. Geier), and offered to travel to Dr. Geier's residence in order to obtain the requested documents (see Exh. 8(a)-(d), Transcript of Deposition of Dr. Mark R. Geier, taken on November 12, 2004 ("Geier Dep.") at 361-62). Plaintiffs' counsel rejected the request and offer, but produced a voluminous collection of slides and other presentations – presumably containing some of the additional opinions and other materials that were referred to in the cover letter to the Report[2]. See Geier Dep. at 23:6-10; Exh. 9, Plaintiff's Objection To And Motion To Quash Subpoena Duces Tecum Of Dr. Mark Geier.

---

[2] The concerns about obtaining disclosures that comply with Rule 26 are particularly keen given Dr. Geier's track record in the courts. A number of courts over the past 16 years have strongly criticized his history of opining in areas in which he has no expertise, as well as the reliability of his opinions. For example: "Dr. Geier's expertise, training, and experience is in genetics and obstetrics. He is however a professional witness in areas for which he has no training, expertise, and experience. Petitioners must seriously consider whether they want to proceed with a witness whose opinion on neurological diagnosis is unacceptable to the undersigned." (Weiss v. Secretary of the Department of Health and Human Services, No. 03-190V at 3 n.1 (Fed. Cl. Oct. 9, 2003)); "Regarding Dr. Geier, the specialist in genetics and forensic medicine, his affidavits and report are not credible." (Bruesewitz v. Secretary of the Department of Health and Human Services, No. 95-0266V (Fed. Cl. Dec. 20, 2002)); "[T]he court was unimpressed with the qualifications, veracity and bona fides" of Dr. Geier, whose testimony was "a misdescription of the historical facts." (Jones v. Lederle Laboratories, 785 F. Supp. 1123, 1126-27 (E.D.N.Y. 1992), aff'd, 982 F.2d 63 (2d Cir. 1992)). His recent foray into the area of thimerosal-containing vaccines is no better; the Institute of Medicine recently concluded that his studies in that area were "plagued by numerous conceptual and scientific flaws, omissions of fact, inaccuracies, and erroneous statistical calculations." Report of the Institute of Medicine, Immunization Safety Review, Vaccines and Autism at 24-25, 27-34, Table 9.

On the date of Dr. Geier's deposition, Plaintiffs wheeled into the deposition room a cart containing fourteen large binders filled with paper (including numerous studies not cited in Dr. Geier's report), and provided Defendants with over 700 pages of previous drafts of the Report. Defendants' counsel questioned Dr. Geier largely on five major subjects listed on his expert disclosures, but dealt with in his Report in only a cursory fashion, if at all:

| Disclosure and Report | Deposition |
|---|---|
| Dr. Geier may testify, according to the expert disclosures, about the theory that "exposure to thimerosal in vaccines either causes or substantially contributes to cause neurological and/or neurodevelopmental injury, including some injuries subsumed within the autism spectrum, to a small percentage of susceptible children." Pl. Second Supp. at 6. Dr. Geier concludes in his Report that "a certain segment of the population has a decreased ability to excrete mercury," but he offers no specific support for his conclusion. See Report at 34-36, 50. | The initial stages of the deposition were devoted largely to inquiries into Dr. Geier's general causation opinion that a small percentage of children are susceptible to injury from thimerosal-containing vaccines. Geier Dep. at 54-88. Defendants' counsel attempted to discover, inter alia, the specific polymorphisms that Dr. Geier contends the susceptible children are alleged to have, as such specific information was not included in the Report as support for his opinions. Id. |
| Dr. Geier states that the thimerosal-containing vaccines were unreasonably dangerous and that the labeling and warnings were inadequate. Report at 50. Dr. Geier's report does not detail the supposed inadequacies of labeling on the thimerosal-containing vaccines, or what warning he contends would have made the product reasonably dangerous. | Defendants' counsel questioned Dr. Geier on his contention that thimerosal-containing vaccines were unreasonably dangerous products that contained inadequate warnings. Geier Dep. at 103-118. |
| The expert disclosure states that Dr. Geier may testify to the "significant conflicts of interest that have affected the scientific and medical debate related to whether significant doses of | In his testimony, Dr. Geier outlined what he believes to be a massive conspiracy amongst the world's health authorities and organizations.[3] Extensive questioning was |

---

[3] Dr. Geier agreed that there is "an agreement or understanding" between the pharmaceutical companies and the World Health Organization "to consciously deceive the public by issuing false statements about the alleged safety of thimerosal when both parties know that to false" (Geier Dep. at 162:6-20); that the vaccine manufacturers fund the American Academy of Pediatrics in part so that the organization will issue "false and deceptive statements purporting to exonerate thimerosal in regard to autism." (Geier Dep. at 169-70); and that the Centers for Disease Control and Prevention was a "rogue organization" that committed "institutional malfeasance" by "intentionally deceiving the American public about the health risks of thimerosal-containing vaccines." (Geier Dep. at 174-75).

| | |
|---|---|
| mercury in pediatric vaccines can cause or contribute to cause neurological or neurodevelopmental injury." Pl. Second Supp. at 10. | required to ascertain the full extent of that putative worldwide conspiracy. Geier Dep. at 143-191. |
| The expert disclosure states that Dr. Geier may testify as to the opinions in various studies "that relate to the issue of whether neurological or neurodevelopmental injury can be caused, in whole or part, by exposure to toxic levels of mercury found in vaccines," and opinions on specific aspects of those studies, including "their limitations and/or methodological flaws." Pl. Second Supp. at 7. Dr. Geier's report discusses the population epidemiological studies that he contends are flawed, but devotes only one paragraph to the discussion. See Report at 33-34. | Defendants' counsel was able to elicit the names of certain authors and articles that Dr. Geier disagreed with, but due to time constraints, Defendants' counsel was unable to delve into exactly what objections Dr. Geier had with the methodology used or the conclusions arrived at by the authors. See Geier Dep. at 405-428 ("Q: Would you be prepared to explain the methodological flaws if we had more time today? A: Sure. – at 413:7-9). |
| The disclosure states that Dr. Geier "may testify concerning various studies, both published and unpublished, that relate to the issue of whether neurological or neurodevelopmental injury can be caused, in whole or in part, by exposure to toxic levels of mercury found in vaccines." Pl. Second Supp. at 7. The cover letter notes that the information in his Report is supplemented by his "publications, the presentations [he has] given on the subject, and any subsequent depositions given by [him] on [the] subject." | Defendants' counsel also questioned Dr. Geier about which of his published papers he intended to rely upon for his testimony, and the various articles that have been critical of the methods and conclusions discussed in those papers. Geier Dep. at 254-288, 417-433. Dr. Geier for the first time identified thirteen articles that he intended to rely upon for his testimony at trial, Geier Dep. at 418-19, but Defendants' counsel was able to do little more than read the article titles into the record in the allotted time. Geier Dep. at 418-60. |

Plaintiffs' counsel stopped the examination of Dr. Geier once seven hours had elapsed. Geier Dep. at 461. When the deposition ended, material Dr. Geier cited in support of his opinions remained unexplained. Dr. Geier, however, stated that if additional time was available, he could provide explanations for the studies in question. See Geier Dep. at 431-32; see also Geier Dep. at 413:7-9. Defendants requested additional time from Plaintiffs' counsel at the end of the deposition, but that request was refused. Geier Dep. at 461-62.

6

Subsequent correspondence concerned the inadequacies of the disclosures as well as the need for more time to complete the deposition of Dr. Geier. On November 24, four defendants agreed to Plaintiffs' counsel's offer to continue the deposition of Dr. Geier, limited to an additional six hours of testimony, with a waiver of any right to seek additional time. Exh. 10, Letter from Winstol Carter to C. Andrew Waters, dated November 24, 2004. Wyeth would not agree to join that agreement unless Plaintiffs' agreed to limit Dr. Geier's testimony on direct examination to the matters raised in the 49 pages of his Report (not including the cover letter). See id. at 2. By letter dated November 29, attached hereto as Exhibit 11, Plaintiffs' counsel declined even to produce Dr. Geier to the other defendants, ostensibly because all parties did not agree to Plaintiffs' terms. On December 1, 2004, four defendants moved "For Leave To Continue the Deposition of Dr. Mark Geier." Exh. 12. The motion seeks an order from the Court granting leave for an additional six hours to take the deposition of Dr. Mark Geier.

## AUTHORITY

Dr. Geier's report fails to comply with Fed. R. Civ. P. 26(a)(2)(B) because Plaintiffs' use of a cover letter to reference unnamed publications, presentations, and testimony as an additional source of opinion testimony contravenes Rule 26(a)(2)(B)'s requirement that an expert report include a <u>complete and detailed</u> account of <u>all</u> the expert witness's opinions.

Dr. Geier's testimony should be limited to the opinions contained in his Report, or the Report should be amended to comply with Rule 26. In either event, Wyeth should be granted additional time to depose Dr. Geier fully on his opinions for the reasons set forth below.

1. **Dr. Geier's Attempt To Incorporate By Reference All Of His Published Papers, Presentations He Has Given And Any Subsequent Depositions Into The Expert Report Contravenes Rule 26(a)(2)(B)**

    Rule 26(a)(2)(B), which states the required elements of an expert disclosure, states:

    > Except as otherwise stipulated or directed by the court, this disclosure shall with respect to a witness who is retained or specially employed to provide expert testimony, be accompanied by a written report prepared and signed by the witness. The report **shall contain** a complete statement of **all opinions to be expressed and the basis and reasons therefor**, the data or other information considered by the witness in forming the opinions . . .

(Emphasis added). The rule requires that the expert report be "'detailed and complete.'" Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 571 (5th Cir. 1996) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendments), and must state "the testimony the witness is expected to present during direct examination," Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments.

    The cover letter enclosing Dr. Geier's report states:

    > Enclosed please find a copy of my report containing my opinions regarding the capability of the mercury in Thimerosal to cause neurological damage in infants who have received vaccines. This information is supplemented by my published papers, the presentations that I have given on this subject, and any subsequent depositions given by me on this subject. As new information is developed, I will endeavor to supplement this report.

    The letter purports to incorporate by reference into the Report a vast and indefinite mass of materials as a source of potential opinion testimony. Fed. R. Civ. P. 26(a)(2)(B) plainly prohibits such an open-ended designation of expert testimony.

8

First, by stating that the Report is "supplemented" by "published papers [and] presentations ... on the subject," Dr. Geier contravenes the Rule's requirement that the written report disclose opinions, as well as the "basis and reasoning" for all opinions the witness is expected to present on direct examination, and the supporting data as well – a violation that is particularly egregious since this unlimited reference does not identify what papers or presentations he is including, what opinions they contain, or how any of the material provides a basis for any of the opinions that he intends to offer at trial. Moreover, Dr. Geier admitted that he does not even have slides for all of the presentations referred to in the letter. See Exh. 8, Geier Dep. at 413:20-414:12. This vague reference to massive numbers of unnamed documents is unacceptable. See Smith v. State Farm and Casualty Co., 164 F.R.D. 49, 54 (S.D. W. Va. 1995) (Expert reports do not comply with Rule 26(a)(2)(B) if they "refer to massive amounts of documents as the basis for the opinions which are expressed in vague terms, with few specific references."); see also Pittard v. Watkins Assoc. Indust., Inc., 990 F. Supp. 1444, 1450 (N.D. Ga. 1997) (ordering plaintiff's expert witness to submit more specific report where original report stated that the data the expert witness considered in forming his opinions came from thousands of pages of literature that was examined over a period of twenty years); Elder v. A.D. Tanner, 205 F.R.D. 190, 194 (E.D. Tex. 2001) ("It is not sufficient simply to list the resources utilized and then state an ultimate opinion without some discussion of [the expert witness's] thought processes.").

Second, the cover letter's statement that Dr. Geier's report is supplemented by "<u>any</u> subsequent deposition" of Dr. Geier concerning the capability of thimerosal to cause neurological damage in infants, again presents an unbounded opportunity for Dr. Geier to add

9

new opinions to his testimony. This, too, contravenes the requirement that the written report disclose "all opinions" the expert witness is expected to present during direct examination.

Not only does the proposed supplementation run afoul of the disclosure requirement of Rule 26(a)(2)(B), but it also frustrates Wyeth's right, under Rule 26(b)(4)(A) to conduct a deposition based on a <u>complete</u> written report, and with knowledge of all proffered opinions and the bases therefor.

### 2. Dr. Geier Should Be Limited To The Opinions Expressed In His Report

Rule 37(c) of the Rules of Civil Procedure provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 37(c)(1)'s automatic exclusion is explicit and broad. <u>See</u> 8A Charles Alan Wright et al., Federal Practice And Procedure § 2289.1 (2004). The sanction, intended to put teeth into the mandatory initial disclosure requirements, applies with equal force to required disclosures regarding expert witnesses. <u>See id.</u> Because Plaintiffs' attempted incorporation by reference does not comply with the strictures of Rule 26(a)(2)(B), the Court should exclude any reference to or use of the materials referenced in the cover letter.

Moreover, the Court should limit Dr. Geier to testifying to the opinions and specific bases for those opinions that are set forth in the actual Report.[4] Those opinions can be located in the final two pages of his report, pages 49 and 50 under the "Conclusion" section:

- "if a certain segment of the population has a decreased ability to excrete mercury, as has been demonstrated in children with neurodevelopmental

---

[4] Wyeth reserves all objections to Dr. Geier's testimony under Rule 702 of the Federal Rules of Evidence, which may further limit or require exclusion of his testimony.

      disorders, there can be little doubt that mercury concentrations once administered to children as part of the routine childhood vaccination schedule resulted in a significant number of children developing neurodevelopmental disorders." Id. at 50.

- "[b]ased upon the foregoing, it is my opinion that the manufacturers were negligent in the use of thimerosal as a preservative without warning consumers of the hazardous potential. In addition, products that contained thimerosal were unreasonably dangerous because its hazards are greater than an ordinary consumer would expect." Id.

The rest of Dr. Geier's report may summarize what other individuals may have reported with regard to thimerosal and mercury generally, but it explains little about Dr. Geier's own opinions on general causation. See, e.g., Report at 31-41 (summarizing various studies with no explanation of whether or how Dr. Geier relies on all of these studies for his expressed opinions). Thus, these areas of testimony should not be considered part of Dr. Geier's opinions. See Elder, 205 F.R.D. at 192-94.

      3.      **In The Alternative, The Court Should Permit Dr. Geier To Amend His Expert Report So That It Complies With Rule 26(a)(2)(B)**

In the alternative, Wyeth requests that the Court order Dr. Geier to amend his expert report to conform to the requirements of Rule 26(a)(2)(B). Such an amended report would omit any reservation of right to open ended, future supplementation with reference to unspecified materials. It would require Dr. Geier to specify all of his ultimate opinions, along with the specific authorities and evidence that Dr. Geier relies upon for those opinions and the reasons behind those opinions. See Elder, 205 F.R.D. at 192-94. Wyeth further requests that if the Court decides on this as the appropriate relief, the Court should set deadlines for the amended expert report and deposition of Dr. Geier that minimally impact the Court-ordered discovery schedule. Plaintiffs' failure to comply with the expert report requirements and the deadlines set by the

Court's Docket Control Order should not be rewarded with an extension of discovery.

    **4.    Regardless Of The Court's Ruling On The Expert Report, Wyeth Requests Additional Time To Depose Dr. Geier Due To The Breadth Of His Opinions And The Massive Amount Of Documents Produced At The Deposition**

Rule 30(d)(2) of the Federal Rules of Civil Procedure provides that a "deposition is limited to one day of seven hours" unless "additional time consistent with Rule 26(b)(2) i[s] needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." The 2000 Advisory Committee Notes to Rule 30 state that the party seeking additional time is expected to show good cause. The Notes list certain factors to consider in determining whether there is good cause for additional time:

> If the examination reveals that documents have been requested but not produced, a court could consider that a reason for extending the time limit. In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided ... [W]ith regard to expert witnesses, there may more often be a need for additional time – even after the submission of the report required by Rule 26(a)(2) – for full exploration of the theories upon which the witness relies.

Each factor weighs in favor of granting additional time here.

### Late and Incomplete Production of Volumes of Documents:

Plaintiffs' counsel waited to the day of Dr. Geier's deposition to produce fourteen binders and over 700 hundred pages of drafts of Dr. Geier's report, even though Defendants had requested such documents in advance of the deposition, and even though Dr. Geier and his counsel were on constructive, if not actual, notice of the discovery requests, since almost identical requests had been served in the <u>Skevofilax</u> case nearly a month earlier. Those fourteen binders included numerous documents upon which Dr. Geier relies, but that were not referenced in the Report. Moreover, Plaintiffs' failed to produce, even by the date of the deposition, certain

12

"company documents" on which Dr. Geier relied in forming his opinions. Geier Dep. at 37-41. Plaintiffs' delayed production (or complete failure to produce in certain instances) of these documents represents good cause for the Court to continue Dr. Geier's deposition – particularly with regard to the documents that were withheld. Indeed, Plaintiffs' late production of documents upon which Dr. Geier relied violates this Court's Amended Discovery Order and Docket Control Order. The Amended Discovery Order required Plaintiffs to produce, by the date set for expert disclosures in the Docket Control Order (i.e., November 8, 2004, for Plaintiffs), "all documents . . . provided to, reviewed by, or prepared by or for the expert in anticipation of the experts' testimony." Amended Discovery Order, dated April 21, 2004, at 1(c)(1); see also Docket Control Order, dated April 20, 2004.

**Multiple Parties:**

Five defendants were entitled to question Dr. Geier during the seven hours allotted, including four vaccine manufacturers and one former thimerosal manufacturer. Counsel for Wyeth went first, and focused its examination on general questions related to the expert opinions to be offered at trial. Wyeth was unable to complete that questioning or to examine Dr. Geier on issues of specific importance to Wyeth. Nor were other defendants able to complete their examination of Dr. Geier on issues of specific interest to those defendants.

**Expert Opinion Testimony:**

Plaintiffs served Dr. Geier's expert report one day after the Court-imposed deadline, and just three days before the deposition. Moreover, Dr. Geier's report, while purporting to include his opinions that are to be offered at trial, is actually in large part a summary of various studies, events, and legislation with a "Conclusion" section tacked on to the

end, where he offers his overarching, conclusory opinions. A proper expert report under Rule 26(a)(2)(B) must contain "some discussion of [the expert witness's] reasoning and thought process that lead to [the expert witness's] ultimate opinions." <u>Elder</u>, 205 F.R.D. at 193. The Report's failure to explain the reasoning behind Dr. Geier's opinions resulted in Defendants having to spend time ascertaining expert witness opinions, rather than testing those opinions as contemplated by the Rules. <u>See</u> Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Notes, 1993 Amendments.

      Defendants' counsel were unable to explore the methodologies Dr. Geier employed for the various papers he is relying upon for his opinions. This area is crucial; indeed, in squarely rejecting the link between thimerosal-containing vaccines and autism, the IOM found that three of Dr. Geier's studies "have serious methodological limitations that make their results uninterpretable." Report of the Institute of Medicine, Immunization Safety Review, Vaccines and Autism at 61. When Defendants' counsel asked whether Dr. Geier would be able to explain his three studies in a way that would be understandable if time permitted, Dr. Geier responded that he would be able to explain the studies in question. Geier Dep. at 431-32. Wyeth should be able to question Dr. Geier further on the topic of the three central studies he intends to rely on for his general causation opinion.

      Although Defendants' counsel proceeded efficiently, seven hours is simply an insufficient amount of time for five defendants to question Plaintiffs' expert witness on the central issue of general causation, especially when the expert disclosure presents a broad scope for Dr. Geier's testimony, no documents were provided prior to the day of the deposition, and Dr. Geier's report failed to sufficiently specify his opinions. <u>See generally</u> <u>New Colt Holding Corp. v. RJG</u>

Holdings of Florida, Inc., No. Civ. 302CV173PCD, 2003 WL 22326978, at *1 (D. Conn. Mar. 27, 2003) (granting defendants' motion for leave to continue deposition of plaintiffs' expert witness in multi-party case where it was not evident that additional time was not appropriate under the circumstances).

If the Court permits Dr. Geier to amend his Report, Wyeth would also seek additional time to depose Dr. Geier regarding whatever new opinions or new bases for previous opinions may appear in the amended report. If the Court declines to strike the cover letter to Dr. Geier's report, and to order Dr. Geier to supplement the Report, Wyeth requests that Dr. Geier's continued deposition not be limited to a certain number of hours. Rather, the deposition should be allowed to continue until completed, subject to Plaintiffs' right to seek a protective order.

## CONCLUSION

For the foregoing reasons, this motion should be granted, and an order entered prohibiting Dr. Geier from offering expert opinion testimony upon direct examination at trial different from that presented in his expert report and permitting Defendants to depose Dr. Geier for no fewer than seven hours at some point prior to December 20, 2004.

Respectfully submitted,

/s/ Michael R. Klatt
Michael R. Klatt
Attorney-in-Charge
State Bar No. 11554200
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, TX 78767
(512) 472-8800 (Telephone)
(512) 474-1129 (Facsimile)

15

OF COUNSEL:

Susan E. Burnett
State Bar No. 20648050
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800 (Telephone)
(512) 474-1129 (Facsimile)

and

James N. Haltom
State Bar No. 08809000
**LAW OFFICES OF HALTOM & DOAN, L.L.P.**
6500 North Summerhill Road
Crown Executive Center, Suite 1A
Texarkana, TX 75503
(903) 255-1000 (Telephone)
(903) 255-0800 (Facsimile)

and

Daniel J. Thomasch
New York State Bar No. 1740 (admitted pro hac vice)
Lauren J. Elliot
New York State Bar No. 5581 (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE L.L.P.
666 Fifth Avenue
New York, New York 10103
(212) 506-5000 (Telephone)
(212) 506-5151 (Facsimile)

**ATTORNEYS FOR DEFENDANT WYETH**

16

## CERTIFICATE OF CONFERENCE

Counsel for Wyeth has conferred with opposing counsel in a good faith attempt to resolve this dispute without court intervention. Counsel could not agree to a resolution, and Plaintiffs oppose the relief sought in this motion.

/s/ Michael R. Klatt
Michael R. Klatt

## CERTIFICATE OF SERVICE

This is to certify that counsel of record has been served via electronic filing transmission on all counsel of record on this the 7th day of December, 2004.

/s/ Michael R. Klatt
Michael R. Klatt