IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRIC OF TEXAS
TEXARKANA DIVISION

VERA EASTER,
Individually and as Next Friend of
JORDAN DELANEY EASTER,

           Plaintiffs,

v.                                CIVIL ACTION NO. 5:03-CV-141 (TJW)

AVENTIS PASTEUR, INC., et al.,

           Defendants.

### PLAINTIFF'S RESPONSE TO WYETH'S MOTION TO PRECLUDE CERTAIN TESTIMONY OF, AND FOR ADDITIONAL TIME TO DEPOSE, DR. MARK GEIER

After allowing its attorney to waste most of the allotted seven hours of deposition time with Dr. Geier, Defendant Wyeth complains that it did not have an adequate opportunity to depose Dr. Geier and now seeks the Court's permission to continue the deposition without any limitation as to time except for the Plaintiff's right to seek a protective order. As will be shown below, the factual support cited for this motion is misleading and the reasoning faulty. Accordingly, the Plaintiff respectfully requests that the Motion be denied.

### ARGUMENT

Buried within Defendant Wyeth's inflammatory rendition of the procedural history regarding their motion is the truth of the matter: On November 8, 2004, as required by the Pre-Trial Scheduling Order in this case, Plaintiff disclosed that one of her witnesses would be Dr. Mark Geier. Also as required by the Federal Rules of Civil Procedure, Plaintiff provided a detailed report of Dr. Geier's proposed testimony. None

of what was listed in the designation should have been a surprise to the Defendants since Dr. Geier has written five published, peer-reviewed articles, which appeared in 2003 and 2004, regarding the causation of autism and other neurological development disorders in infants immunized with vaccinations containing Thimerosal.  In addition, Dr. Geier presented his opinions and the basis for his opinions before the Institute of Medicine on multiple occasions, twice in 2004.  Moreover, as Defendants are well aware, Dr. Geier has presented his opinions and their basis at numerous DAN! (Defeat Autism Now) conferences, before the Food and Drug Administration and to Congress.

In accordance with the Federal Rules of Civil Procedure, the Plaintiff provided Defendants a detailed 50-page report that contained 129 footnotes annotating the basis for his opinions.  Attached to the report was a cover sheet from Dr. Geier that simply said:

> Enclosed please find a copy of my report containing my opinions regarding the capability of the mercury in Thimerosal to cause neurological damage in infants who have received vaccines.  This information is supplemented by my published papers, the presentations that I have given on this subject, and any subsequent depositions given by me on this subject.  As new information is developed, I will endeavor to supplement this report.

Defendant Wyeth attempts to make hay with this statement, contending that the letter attempts to "incorporate by reference into the Report a vast indefinite mass of materials as a source of potential opinion testimony."  Wyeth's Motion at 8.  Defendant's choice of phraseology is clearly an attempt to fit within the holding of the case they cite Smith v. State Farm and Casualty Co., 164 F.R.D. 49, 54 (S.D. W. Va. 1995).  Unfortunately for them, the facts simply do not support this characterization.

In his cover letter, Dr. Geier simply states that the information is supplemented by his published papers.  During the course of the deposition, he specifically identified the

2

papers that he was relying upon for his opinions in this case. Deposition of Dr. Mark R. Geier ("Geier Dep.") at 417-18. Dr. Geier was simply pointing out that instead of incorporating the entire text of each article in his report that he would be relying upon his published articles and the citations contained therein. Geier Dep. at 413-14. There is simply no reasonable basis to complain about the meaning or import of the citation to Dr. Geier's previously published works.

The second piece of supplementation referred to was the presentations that Dr. Geier has given to various organizations and governmental groups on issues central to this lawsuit. Most, if not all, of the information contained within those powerpoint presentations is also contained in Dr. Geier's detailed report. Nevertheless, in the interest of full disclosure, Plaintiff's counsel provided Defendant Wyeth with copies of those powerpoint presentations in advance of the deposition.[1]

The third statement contained within his cover letter was the standard expert catchall phrase that "as new information is developed," he will supplement his report. See Fed. R. Civ. P. 26(e). Plaintiff is confused about Defendant Wyeth's outrage at this proviso since the reports provided by its experts contained the very same language. For example, Dr. Buxbaum concludes his report with this proviso:

---

[1] In an attempt to prejudice the Court's opinion about Dr. Geier, Defendant Wyeth in footnote 2 of its brief on page 4 cites to three decisions in the Vaccine Court wherein comments were made concerning Dr. Geier's testimony. What Defendant Wyeth fails to acknowledge is that Dr. Geier has been accepted as an expert witness in over 100 cases before the National Vaccine Injury Compensation Program of the United States Court of Federal Claims. Moreover, his opinions have survived Daubert and Fry challenges in both Pennsylvania and Ohio.

3

> I may wish to supplement these opinions or the bases for as a result of new scientific research or publications, or new testing that may be conducted, or in response to other statements and issues that may arise in my area of expertise by plaintiff's expert witnesses, through their supplemental or rebuttal expert reports, or in their depositions or other testimony.

In strikingly similar language, Dr. Nel concludes his expert report by stating:

> I may need to supplement these opinions or the bases for as a result of new scientific research or publications, or new testing that may be conducted, or in response to other statements and issues that may arise in my area of expertise by plaintiff's expert witnesses, through their supplemental or rebuttal expert reports, or in their depositions or other testimony.

With the exception of "wish" and "need," the language of these two reports is identical. It is difficult to believe that two experts, one writing a report in New York and the other in Los Angeles, independently and purely by coincidence choose the exact same words to describe the possibility of future supplementation.

Moreover, since Dr. Buxbaum reveals in his report that he has "never testified in any litigation," it is difficult to believe that he understands and has a working knowledge of "supplemental or rebuttal expert reports." The final indication that this language was endorsed and provided to each of these experts is the fact that of the six non-Eli Lilly expert reports, these are the only two reports that contain this proviso and both are contained on what is readily apparent to be transmitted by facsimile. Certainly, Defendant Wyeth's argument that Dr. Geier's supplemental language is somehow violative of the spirit of the Federal Rules of Civil Procedure is disingenuous at best when they have supplied similar language for their experts to put in their reports.

In addition to the cover letter, Defendant Wyeth complains about the timing and content of Plaintiff's response to the Defendants' Request for Production of Documents. Late in the afternoon of November 10, 2004, essentially a day and half before Dr. Geier's scheduled deposition, Defendant Wyeth served on Plaintiff an extensive 11 page Request for Production of Documents seeking an array of documents in 30 different categories. Citing the limited time provided to comply with this request, Plaintiff promptly objected to the production and moved to quash the subpoena duces tecum. Even though Plaintiff had a legitimate complaint regarding the timing of Defendants' request, Dr. Geier was able to scour his files and brought with him all of the documents he could locate that were responsive to the Request for Production.

Given the overly broad nature of the requests and erring on the side of production and disclosure, the documents in Dr. Geier's possession that were responsive to the Request for Production included 14 notebooks and an eight-inch stack of documents.[2] Now, the Defendant complains that Dr. Geier produced too much information. For example, in its motion, Defendant Wyeth repeatedly cites "over 700 pages of previous drafts of the Report." See Wyeth's Motion at 5, 12. Defendants' Request for Production number 9, however, sought "Dr. Geier's report(s) in this case, including all drafts of the report(s)." As explained to counsel during the deposition, as Dr. Geier wrote his report, he saved the document at whatever point he stopped. Not knowing whether these incomplete renditions of what ultimately became his final report constituted "drafts" as

---

[2] Seven of the notebooks dealt with issues regarding the DPT that lead defense counsel Mr. Tomasch has reviewed in the past. Although invited to inquire as to why these notebooks were produced, counsel declined to avail himself of the opportunity. Geier Dep. at 362-64. Had counsel inquired, he would have discovered that the relevance of the documents centered upon the financial ties between the Journal of Pediatrics, a firm critic of the Thimerosal-autism connection, and the Vaccine Manufacturers.

stated in the request for production, Dr. Geier erred on the side of caution, printed them all out and produced them. Geier Dep. at 7.

Now, somehow, Dr. Geier has violated the spirit of the Federal Rules of Civil Procedure because he complied with a Request for Production of documents as broadly as it was drawn. It is Plaintiff's position that the revisions to the Federal Rules of Civil Procedure were implemented to insure full disclosure of information without extensive intervention of the Court. See Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir. 1986) ("The Federal Rules of Civil Procedure . . . instituted a system which relies on a liberal opportunity for discovery . . . ."); STMicroelectronics, Inc. v. Motorola, Inc., 308 F.Supp.2d 754, 756 (E.D. Tex. 2004) (noting that Court "adheres to, as the Federal Rules of Civil Procedure contemplate, a policy of liberal discovery"); see also Klonoski v. Mahlab, 156 F.3d 255, 271 (1st Cir. 1998) ("The purpose of the discovery rules is to provide for the 'fullest possible' pretrial disclosure of admissible evidence, to 'reduc[e] the possibility of surprise,' and to insure 'a fair contest.'" (citing Hickman v. Taylor, 329 U.S. 495, 500-01 (1947) and United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958))); 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2206 (1970) (discovery procedures under the Federal Rules of Civil Procedure constitute "a liberal and integrated scheme for the full disclosure of relevant information"). Plaintiff finds it difficult to fathom how Dr. Geier's conduct has violated this policy.

It is clear that the true motivation behind Defendant Wyeth's comments is to gain additional time to depose Dr. Geier. By asking for an overly broad array of documents, Defendant Wyeth created a situation in which, no matter how Dr. Geier responded, Defendant Wyeth would be in a position to request additional time. If Dr. Geier had not

6

produced his files, Defendant Wyeth would be before this Court complaining about Plaintiff's Motion to Quash and arguing that it would be entitled to the documents and an opportunity to examine Dr. Geier when the documents were produced.  Dr. Geier having complied with the subpoena duces tecum, Defendant Wyeth now complains that somehow they were not given enough time to fully explore what the contents of those documents were with Dr. Geier.  What Wyeth fails to mention is that there were at least two counsel for each defendant present at the deposition and that, during the seven hours of deposition testimony, all of the documents produced were reviewed by these teams of lawyers.

It is clear that the intent of the defendants was not to fully explore Dr. Geier's opinions during their allotted time frame, but rather to set up a situation wherein they could complain to this Court that somehow they were unfairly treated.  This strategy is revealed by the type of questions that were asked during the deposition.[3]

For example, instead of asking probing questions regarding any criticisms that Dr. Geier had regarding the methodologies of various studies conducted by others, defense counsel deliberately chose to simply ask, "Would you be prepared to explain the methodological flaws if we had more time today?"  Geier Dep. at 413.  Regarding Dr. Geier's studies, they simply asked if Dr. Geier would be able to explain his three studies in a way that would be understandable if time permitted.  Geier Dep. at 431-32.

The most egregious statement contained with Defendant Wyeth's Motion is their contention on page 14 of their brief that "Defendants' counsel proceeded efficiently" during the seven hours of deposition testimony.  While it is not normally Plaintiff's

---

[3] In fact, before the deposition was even half completed, counsel started peppering the record with their complaints about the need for additional time to conduct the examination.  Geier Dep. at 289-90.

7

counsel's place to comment on how defense counsel conducts his examination or how the different defense counsel choose to split the time provided, even a cursory review of the deposition reveals that defense counsel wasted hours having Dr. Geier acknowledge that the defense counsel was properly quoting documents as defense counsel took the time to read into the record the positions of various federal agencies and regulatory groups.[4]

While defense counsel did probe Dr. Geier's disagreement with the published findings of these agencies, the examination of Dr. Geier on this issue consumed over 100 pages of testimony. See Geier Dep. at 143-254. In addition, a significant part of the deposition was devoted to having Dr. Geier identify that he did in fact write the studies that contained his name and that those studies were in fact listed in the IOM 2004 report. See Geier Dep. 283-85. This grueling process was completely unnecessary since the IOM 2004 report clearly listed each of Dr. Geier's studies.

Most telling is that in the first three hours of testimony, Dr. Geier was not asked a single question regarding the substantive positions contained within his report. In fact, very few questions during the entire seven-hour period were directed to Dr. Geier's report. Moreover, Dr. Geier was not asked any questions regarding the significance of the notebooks that he produced.

Despite these excesses and the Defendants' clear game plan to seek more time than is allotted under the rules, Plaintiff, not wanting to waste the Court's time in

---

[4] The purported purpose of this line of questioning was to probe Dr. Geier's disagreement with these agencies. Any feigned surprise at Dr. Geier's mistrust of the agencies' conclusions is certainly not justified based upon Dr. Geier's published works and the published opinions of the regulatory agencies. It seems that defendant Wyeth seeks to characterize Dr. Geier's opinions regarding the complicity between the drug companies and the regulatory bodies as the ravings of a crackpot. However, a congressional committee that held extensive hearings on this issue concluded that the FDA acted with a "misplaced protectionism of the pharmaceutical industry." Mercury In Medicine Report, Speech of Hon. Dan Burton of Indiana, 149 Cong. Rec. E1011-03, E1030 (May 20, 2003).

8

refereeing this dispute, offered an eminently fair compromise: six additional hours to deposition testimony.[5] Instead of accepting Plaintiff's compromise, Defendant Wyeth seeks an unlimited opportunity to depose Dr. Geier. Given the pace of the deposition taken on November 12, such a request will result in a deposition lasting several days, if not longer.

Finally, throughout its Motion, Defendant Wyeth repeatedly complains that Dr. Geier's report does not contain any of his opinions or the bases for his opinions. Plaintiff contends that a fair reading of the report belies those complaints. The true motivation of this Motion is nothing more than harassment of an expert whose opinions are damaging to Defendant Wyeth.

The revisions to the Federal Rules of Civil Procedure were implemented to combat exactly this type of conduct. Defendant Wyeth should not be rewarded for requesting copious documents and then complaining when they are produced. Defendant Wyeth should not be rewarded for failing to efficiently use the allotted seven hours of deposition time and then complain that they did not have the opportunity to fully explore Dr. Geier's opinions. In short, Defendant Wyeth's motion should be denied.

---

[5]Contrary to Defendant Wyeth's statement that "Defendants requested additional time from Plaintiffs' counsel at the end of the deposition, but that request was refused," Plaintiff's counsel, relying on the Court's Pre-Trial Order, simply declined to stipulate to additional time and referred defense counsel to meet and confer with lead Plaintiff's counsel C. Andrew Waters. Geier Dep. at 291, 461-63. Since the deposition started at 9:00 am and did not end until 7:00 pm on a Friday night, it was not unreasonable to terminate the deposition for that day.

Respectfully submitted,

**WATERS & KRAUS, LLP**


__/s/ Dana Fox_____
DANA C. FOX
Attorney-in-charge
State Bar No. 24032191
C. ANDREW WATERS
State Bar No. 20911450
3219 McKinney Ave., Ste. 3000
Dallas, Texas 75204
Tele:   (214) 357-6244
Fax:   (214) 357-7252

OF COUNSEL:

MELISSA R. SMITH
State Bar No. 24001351
GILLAM & SMITH, LLP
110 South Bolivar Street, Suite 204
Marshall, Texas 75670
Tele:   (903) 934-8450
Fax:   (903) 934-9257

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing **Response To Wyeth's Motion To Preclude Certain Testimony Of, And For Additional Time To Depose, Dr. Mark Geier** was sent via facsimile to all counsel of record on the 9th day of December 2004.

__/s/ Dana Fox_____
DANA C. FOX